OPINION
{¶ 1} Wild-Fire, Inc. ("Wild-Fire") appeals from a judgment of the Clark County Court of Common Pleas, which recalculated the amount owed by Laughlin Scanlan, Inc. and its individual partners Eric Laughlin and Brian Scanlan (hereinafter collectively referred to as "Laughlin") to Wild-Fire for electrical services pursuant to our remand in Wild-Fire,Inc. v. Laughlin, Clark App. No. 2001-CA-27, 2001-Ohio-7008 ("Wild-FireII").
{¶ 2} This is the third time that this case has been before this court. The facts are fully set forth in our previous opinions,Wild-Fire, Inc. v. Laughlin (Mar. 9, 2001), Clark App. No. 2000-CA-51 ("Wild-Fire I"), and Wild-Fire II, supra, and we will not belabor them here. However, a brief recitation of the facts is necessary. This case arose from a construction project in which Laughlin was the general contractor and Wild-Fire was the electrical subcontractor. Wild-Fire's bid had been $81,910, but the parties had recognized that the building's design specifications were subject to change. Such changes were to be covered by change orders, submitted to Laughlin in writing prior to the work being performed. In practice, Wild-Fire completed the additional work with only verbal authorization and submitted the bulk of the change orders at the conclusion of its work. A dispute arose regarding the amount Laughlin owed to Wild-Fire as a result of twenty-seven change orders submitted to Laughlin following Wild-Fire's completion of the job.
{¶ 3} Wild-Fire sued Laughlin under the theories of breach of contract and quantum meruit, claiming that it was owed $48,132.73 for all of the change orders. The main dispute centered on whether Wild-Fire's bid had been for one electrical service or three. The trial court concluded that the bid had been for three electrical services and that Wild-Fire had been entitled to $16,733 for the remaining change orders based on quantum meruit. This amount was also the amount of a settlement offer made by Laughlin. Wild-Fire appealed, and in Wild-Fire I, we affirmed the trial court's conclusion that Wild-Fire's bid had been for three electrical services, but reversed the court's damage award because it appeared to be based solely on Laughlin's settlement offer. SeeWild-Fire I, supra. We remanded the case for the trial court to recalculate damages. Id.
{¶ 4} On remand, the trial court ordered Laughlin to pay an additional $13,417.38, for a total damage award of $30,150.38. Laughlin appealed. We noted in Wild-Fire II that it appeared that the trial court had included $12,242.73 for hot water heaters in recalculating damages.Wild-Fire II, supra. We then stated:
{¶ 5} "Laughlin, however, has consistently maintained that the hot water heaters and the electrical support necessary to operate them were included in the original bid and thus could not be added to the contract price through a change order. Throughout the hearing conducted by the trial court in May 2000, Laughlin's representatives maintained that they had refused to negotiate with Wild-Fire about [the change orders related to the three electrical services] for this reason. More importantly, no evidence was presented from which the trial court could have differentiated between the electrical systems and water heaters in terms of their inclusion in the contract; these items were discussed collectively.
{¶ 6} "In its June 15, 2000 judgment entry, the trial court seemed to accept Laughlin's argument that the disputed items had been covered by the bid, although it did not address the hot water heaters specifically. Then, without explanation, the trial court included the hot water heaters in the amount owed to Wild-Fire when it entered judgment on remand. This issue is further complicated by the fact that our prior opinion and Laughlin's proposed settlement offer to Wild-Fire, which was introduced into the record as an exhibit, refer to the addition of a third hot water heater in the design specifications that apparently had not been called for in the bid documents.
{¶ 7} "The trial court's determination regarding the hot water heaters, including whether they were included in the original bid and how many, is unclear. It appears from the trial court's June 15, 2000 judgment entry that it did not intend to compensate Wild-Fire for the installation of the hot water heaters in quantum meruit because they had been included in the contract price. Moreover, the court did not comment specifically upon the apparent addition of at least one hot water heater after the original contract was entered. Rather, the court included the total cost of the hot water heaters in its somewhat sketchy calculation of damages on remand. In this respect, the trial court erred. We will again remand this matter to the trial court for clarification of its damage award and modification of that award, if appropriate." Wild-FireII, supra.
{¶ 8} On January 31, 2002, the trial court filed an entry concluding that the three electrical services were included in Wild-Fire's bid. Those three electrical services were for general lighting, heating and cooling ("HVAC"), and hot water heaters. Thus, the court concluded that the hot water heater service had been included in the original bid. The court then subtracted the amount that Laughlin had already paid to Wild-Fire ($16,733) and that Wild-Fire had withdrawn from its demand ($4,228.56), the $12,242.73 for the hot water heater service, and the $17,982.35 for the general lighting and HVAC services from the $52,361.29 for which Wild-Fire had initially submitted change forms. Based upon this calculation, the court concluded that Laughlin owed Wild-Fire an additional $1,174.65. The judgment was entered on the court's journal February 4, 2002.
{¶ 9} Wild-Fire appealed, raising two assignments of error.
{¶ 10} Before we address Wild-Fire's arguments, we will address a procedural issue raised by Laughlin. Laughlin argues that this appeal should be dismissed because Wild-Fire filed its notice of appeal before the trial court had ruled on its motion for reconsideration. Laughlin argues that the motion was really one for a new trial and that the time for filing a notice of appeal begins to run when the order disposing of a motion for a new trial is entered. Thus, Laughlin contends that Wild-Fire filed its notice of appeal too early. However, a premature notice of appeal is not grounds for dismissal of the appeal. Rather, we treat such a premature notice as having been filed immediately after the entry was filed. See App.R. 4(C).
{¶ 11} Considering Wild-Fire's motion as a motion for reconsideration, Wild-Fire still filed its notice of appeal within the allowable time. A motion for reconsideration after a final judgment in the trial court "is simply a legal fiction created by counsel, which has transcended into a confusing, clumsy and `informal local practice.'"Pitts v. Dept. of Transportation (1981), 67 Ohio St.2d 378, 381,423 N.E.2d 1105. Thus, Wild-Fire's notice of appeal was required to be filed within thirty days of February 4, 2002, the date that the trial court's January 31, 2002 judgment entry was entered by the clerk on the journal, notwithstanding Wild-Fire's motion for reconsideration. Thirty days from February 4, 2002 was March 6, 2002. As the notice was filed March 4, 2002, it was within the allowable time.
{¶ 12} Wild-Fire has addressed its two assignments of error together, and we will do the same.
{¶ 13} "I. THE TRIAL COURT ERRED IN FAILING TO CONSIDER EVIDENCE OF DAMAGES ON REMAND.
{¶ 14} "II. THE TRIAL COURT'S APRIL 27, 2001, JUDGMENT WAS SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE IN THE RECORD."
{¶ 15} Wild-Fire appears to make two arguments in its brief. One is that the trial court's April 27, 2001 judgment was supported by competent, credible evidence and should be affirmed. As we have already reversed that judgment, this argument comes too late. The time for filing an application for reconsideration of our December 14, 2001 opinion is long past, and we will not reconsider it now.
{¶ 16} We will address Wild-Fire's second argument, that the January 31, 2002 judgment of the trial court was not supported by the evidence. Wild-Fire points to the language in Wild-Fire II, remanding the case "to the trial court for clarification of its damage award and modification of that award, if appropriate." Wild-Fire II, supra (emphasis added). Wild-Fire argues that modification of the award was not appropriate and that the trial court's modification was not supported by the evidence. Wild-Fire's argument is confined to a single point, whether the hot water heater service was one of the three electrical services.
{¶ 17} As we have discussed, the trial court concluded that the hot water heater service was one of the three electrical services included in Wild-Fire's bid. Contrary to Wild-Fire's arguments, this conclusion is supported by the evidence in the record. The trial court made four evidentiary findings to support its decision. First, Eric Laughlin testified that item one, involving the hot water heaters, in Wild-Fire's letter containing twenty-seven additional items was not extra and had been part of the original bid. Second, Eric Laughlin testified that he had given all bidders a letter from Ohio Edison, which stated that a separate service was required for hot water heating. Third, Eric Laughlin's handwritten addendum to the contract between the parties listed the hot water heaters as one of the three electrical services. Finally, the trial court noted that Wild-Fire's letter to Laughlin listing the change orders for which it was requesting reimbursement stated that a separate electrical service had been required for hot water heating.
{¶ 18} The trial court could have reasonably concluded that the hot water heater service was one of the three electrical services included in Wild-Fire's bid. Thus, the trial court was correct in excluding that amount from its award to Wild-Fire. As this is the only point regarding which Wild-Fire is arguing, Wild-Fire's two assignments of error are overruled.
{¶ 19} The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.